# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

VANESSA AIDEE MANSOUR,

Defendant-Appellee.

FOR PUBLICATION
July 19, 2018
9:00 a.m.

No. 342316
Oakland Circuit Court
LC No. 2016-259655-FH

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

BOONSTRA, J.

Defendant appeals by leave granted[1] the trial court's order denying her motion to dismiss under § 4 of the Michigan Medical Marihuana[2] Act ("MMMA"), MCL 333.26421 et seq. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Acting on a tip from road patrol officers on June 10, 2016, Troy Police Detective Daniel Langbeen and other members of the Oakland County Narcotics Enforcement Team arrived at a "ranch style home" located at "5425 Berwyck" in Troy. After arriving at the home, Langbeen spoke with defendant, who told him that she lived there with "her husband, and her two children." Langbeen then asked defendant "for consent to search the basement," testifying that "it was obvious to [him] at that point that marijuana – there was marijuana growin' [sic] down there." Defendant replied that "she wasn't sure," and she told Detective Langbeen that she wanted to "contact her attorney." Approximately one hour later, defendant's attorney, Barton

---

[1] *People v Mansour*, unpublished order of the Court of Appeals, entered April 5, 2018 (Docket No. 342316).

[2] "[B]y convention this Court uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App 590, 593, n 1; 837 NW2d 16 (2013), citing *People v Jones*, 301 Mich App 566, 569 n 1; 837 NW2d 7 (2013). Therefore, we will refer to "marijuana" by that spelling except when quoting from the MMMA.

Morris, arrived at defendant's home; he subsequently told Langbeen that "they had consent to search the home."

The search revealed that the basement contained an "indoor marijuana grow operation." Langbeen testified that there were "126 plants located in three different rooms along with approximately 550 grams of marijuana buds on a drying rack." Additionally, "[t]here were two digital scales, Ziploc bags commonly used to package narcotics for sale, grow lights, and a watering system." Morris subsequently gave Langbeen permission to search the rest of the house; a "Glock 19 9mm handgun" was discovered in a bedroom safe that was unlocked by defendant.

In August 2016, defendant was charged with one count of delivery or manufacture of 20 marijuana plants or more, but less than 200 marijuana plants, MCL 333.7401(2)(d)(*ii*), and one count of delivery or manufacture of marijuana, MCL 333.7401(2)(d)(*iii*). In October 2017, defendant was additionally charged with two corresponding counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On November 13, 2017, defendant filed a motion "to examine evidence." Defendant sought to examine the marijuana and marijuana plants seized from her home so that Dr. Frank Telewski[3] could conduct "scientific analyses" to determine "the weight, usability, and moisture content of said marijuana; and whether or not the amount possessed was in compliance with the [MMMA]." The trial court granted the motion.

On January 8, 2018, defendant filed an assertion of affirmative defense, in which she argued that she was a medical marijuana patient entitled to immunity under § 4 of the MMMA, MCL 333.26424, as well as a defense under § 8 of the MMMA, MCL 333.26428. Defendant also filed a motion to dismiss the possession with intent to deliver marijuana count (and the associated felony-firearm count) under § 4 of the MMMA. Defendant's motion made it clear that the "126 marijuana plants" seized from her home were "not being challenged" in that motion; rather, defendant's motion "focus[ed] on the '550 grams' of marijuana" that were on "drying racks" in defendant's basement. Relying on *People v Manuel*, 319 Mich App 291; 901 NW2d 118 (2017), defendant argued that the 550 grams of marijuana was "unusable" because it was "drying," and therefore, the unusable marijuana "must be excluded" when considering defendant's claim of immunity under § 4 of the MMMA.[4]

---

[3] Telewski holds a PhD in biology.

[4] In order to ascertain the amount of "usable marijuana," as contemplated by the statute, the defendant relied, in part, on an analysis conducted by Telewski. Telewski indicated that he examined the marijuana on December 21, 2017, weighed it at 484.5 grams, and therefore opined that the marijuana was not "dried" at the time of its seizure because it had lost 12% of its weight (through a loss of moisture) during the 18 months since the marijuana was seized. He also noted the presence of mold on the marijuana, which also indicated that the marijuana was not "dried" when it was seized. Telewski therefore opined that the marijuana was not "usable marijuana" under the definition of the MMMA.

The prosecution argued that this Court's interpretation of § 4 of the MMMA in *People v Carruthers*, 301 Mich App 590, 609; 837 NW2d 16 (2013), was controlling, and that the holding of *Carruthers* required the trial court to consider the total amount of marijuana possessed by defendant, not just the total amount of usable marijuana. The trial court agreed with the prosecution, finding *Carruthers* to be "more comprehensive" than *Manuel*. Additionally, the trial court observed that it was "confronted with somewhat contradictory binding cases," and thus, it would "proceed to follow the first case," i.e., *Carruthers*, rather than *Manuel*. Therefore, the trial court denied defendant's motion to dismiss. This appeal followed.

## II. STANDARD OF REVIEW

"We review for an abuse of discretion a circuit court's ruling on a motion to dismiss but review de novo the circuit court's rulings on underlying questions regarding the interpretation of the MMMA, which the people enacted by initiative in November 2008." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citations omitted); *People v Hartwick*, 498 Mich 192, 214-215; 870 NW2d 37 (2015) ("questions of law surrounding the grant or denial of § 4 immunity are reviewed de novo"). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015), citing *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "We review questions of statutory interpretation de novo." *Carruthers*, 301 Mich App at 596 (citation omitted).

## III. ANALYSIS

On appeal, defendant argues that the trial court erred when it denied her motion to dismiss based on this Court's ruling in *Carruthers*. Rather, defendant argues, *Manuel* controls.

In *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012), our Supreme Court explained:

> The MMMA does not create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]." [footnote omitted; alteration in original.]

In *Hartwick*, the Court further explained:

> A defendant may claim entitlement to immunity for any or all charged offenses. Once a claim of immunity is made, the trial court must conduct an evidentiary hearing to factually determine whether, for each claim of immunity, the defendant has proved each element required for immunity. Those elements consist of whether, at the time of the charged offense, the defendant
>
> > (1) was issued and possessed a valid registry identification card,

(2) complied with the requisite volume limitations of § 4(a) and § 4(b),

(3) stored any marijuana plants in an enclosed, locked facility, and

(4) was engaged in the medical use of marijuana. [Hartwick, 498 Mich at 217-218 (citations omitted)].

At the time of the search of defendant's home, § 4(a) of the MMMA provided, in relevant part:

A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, *provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana*, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount. [MCL 333.26424(a), as amended by 2012 PA 512 (emphasis added).][5]

Similarly, at the time of the search of defendant's home, MCL 333.26423(k), as amended by 2012 PA 512, provided: " '[u]sable marihuana' means the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant." "Marihuana," however, was separately and more broadly defined as follows:

"Marihuana" means all parts of the plant Cannabis sativa L., growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any sterilized seed of the plant that is incapable of germination. Marihuana does not include industrial hemp grown or cultivated, or both, for research purposes under the industrial hemp research act. [MCL 333.26423(e); MCL 333.7106.]

---

[5] Section 4(b) of the MMMA similarly provided protections for a "primary caregiver," but "only if the primary caregiver *possesses marijuana* in forms and amounts that do not exceed . . . [f]or each qualifying patient . . . *a combined total of 2.5 ounces of usable marihuana*." MCL 333.26424(b) as amended by 2012 PA 512 (emphasis added).

In *Carruthers*, this Court concluded that the marijuana infused brownies that the defendant possessed "were not usable marijuana under the MMMA," yet defendant was not entitled to immunity under § 4 of the MMMA because both § 4(a) and § 4(b) conditioned their immunity "on the qualifying patient's or primary caregiver's possessing 'an amount of marihuana that does not exceed . . . 2.5 ounces of usable marihuana . . . .'" *Carruthers*, 301 Mich App at 609, quoting MCL 333.26424(a) and MCL 333.26424(b)(1). In *Carruthers*, we went on to state, in pertinent part:

> In short, the question of whether a possessor of marijuana possesses an allowed quantity of usable marijuana is only the beginning of the relevant inquiry under § 4. A further pertinent and necessary inquiry, for purposes of a § 4 analysis, is whether that person possesses *any* quantity of marijuana that does *not* constitute usable marijuana under the term-of-art definition of the MMMA. If so, and without regard to the quantity of usable marijuana possessed, the person then does not possess "an amount of *marihuana* that does not exceed . . . 2.5 ounces of *usable marihuana* . . . ." MCL 333.26424 (a) and (b)(1) (emphasis added). Instead, he or she then possesses an amount of marijuana that is in excess of the permitted amount of usable marijuana. In other words, the language establishing limited immunity in § 4 of the MMMA expressly conditions that immunity on the person possessing *no* amount of marijuana that does not qualify as usable marijuana under the applicable definitions. *Carruthers*, 301 Mich App at 610.

Therefore, this Court concluded that "consideration must be given not only to the amount of usable marijuana that is possessed but, additionally, to the amount of marijuana that is possessed." *Id*. at 609.

Following this Court's decision in *Carruthers*, the Legislature amended the MMMA in 2016 PA 283, effective December 20, 2016. Currently, § 4(a) of the MMMA provides a qualifying patient with immunity if the patient "possesses an amount of marihuana that does not exceed a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents . . . ." MCL 333.26424(a). In other words, it retained the previously existing language of that section, including interacting references to the separately defined terms "marihuana" and "usable marihuana," while adding a provision for "usable marihuana equivalents" and for combining the amounts of usable marihuana and usable marihuana equivalents.[6] As explained by the Legislature in the "Enacting section 2" to 2016 PA 283, the amendments to the MMMA were retroactive with respect to "clarifying the quantities and forms of marihuana for which a person is protected from arrest, precluding an interpretation of 'weight' as aggregate weight, and excluding an added inactive substrate component of a preparation in

---

[6] The definition of "[u]sable marihuana" was also amended, and MCL 333.26423(n) now provides: " 'Usable marihuana' means the dried leaves, flowers, plant resin, or extract of the marihuana plant, but does not include the seeds, stalks, and roots of the plant." A definition was also provided for the term "usable marihuana equivalent." MCL 333.26423(o).

determining the amount of marihuana, medical marihuana, or usable marihuana that constitutes an offense."

Following these legislative amendments, this Court decided *Manuel*. In *Manuel*, the defendant was "both a qualifying patient and a primary caregiver for five patients, so he was allowed . . . to possess up to 15 ounces, or approximately 425.24 grams, of usable marijuana under the MMMA." *Manuel*, 319 Mich App at 300. The marijuana he possessed was well in excess of that amount, however. The trial court held that "the marijuana . . . was unusable because it was in 'various stages of drying.' " Id. at 122. It therefore ruled "that the defendant was entitled to § 4 immunity and dismissed the charges against him." Id. at 123.

The prosecution appealed, arguing that the record did not support the trial court's conclusion that the marijuana was "in various stages of drying," but rather that it "was dried." The prosecution therefore argued that the marijuana constituted usable marijuana, and that because the amount was in excess of the allowed amount of usable marijuana, the defendant was not entitled to § 4 immunity. The defendant disagreed, arguing that the record supported the trial court's conclusion that the marijuana was "drying," not dried, that it was therefore not usable marijuana, and that the defendant was therefore entitled to § 4 immunity. In support of that argument, the defendant utilized testimony from the same Dr. Telewski whom defendant is utilizing in the instant case, to the effect that the marijuana had decreased in weight because of a loss of moisture.[7]

Perhaps not surprisingly given the manner in which the parties had framed the issues on appeal, this Court in *Manuel* defined the "question" before it as "whether this marijuana was 'usable' for purposes of the MMMA." *Manuel*, 319 Mich App at 301. The Court evaluated the trial court's factual conclusion in that regard under a clear error standard, and held:

> Given Telewski's expert testimony that the weight differential of 127 grams was most likely due to a loss of moisture, and defendant's testimony that the harvested marijuana was in various stages of drying because not all of it had been placed in the tins at the same time and had only been in the tins two to three days, we are not definitely and firmly convinced that the trial court made a mistake when it found that the marijuana was in "various stages of drying" and therefore was not usable under the MMMA. Put simply, the marijuana was "drying," not "dried," and therefore was not usable under the statutory definition. [Id. at 303.]

---

[7] The parties' respective positions were therefore counter to what one might logically have expected. That is, the prosecution argued that the marijuana in question constituted usable marijuana such that it was subject to the protections of the MMMA so long as it was within allowed quantities. Defendant argued, to the contrary, that the marijuana in question did not constitute usable marijuana, which of course is the type of marijuana with respect to which the MMMA provides protections, provided that it is possessed within allowed quantities.

Importantly, however, neither the prosecution nor the defendant in *Manuel* cited to *Carruthers*. Nor, perhaps largely for that reason, did this Court in *Manuel* cite to *Carruthers*. And, consequently, neither the parties nor this Court in *Manuel* ever reached the second prong of the *Carruthers* analysis:

> In short, the question of whether a possessor of marijuana possesses an allowed quantity of usable marijuana is only the beginning of the relevant inquiry under § 4. A further pertinent and necessary inquiry, for purposes of a § 4 analysis, is whether that person possesses *any* quantity of marijuana that does *not* constitute usable marijuana under the term-of-art definition of the MMMA. If so, and without regard to the quantity of usable marijuana possessed, the person then does not possess "an amount of *marihuana* that does not exceed . . . 2.5 ounces of *usable marihuana* . . . ." MCL 333.26424 (a) and (b)(1) (emphasis added). Instead, he or she then possesses an amount of marijuana that is in excess of the permitted amount of usable marijuana. In other words, the language establishing limited immunity in § 4 of the MMMA expressly conditions that immunity on the person possessing no amount of marijuana that does not qualify as usable marijuana under the applicable definitions. *Carruthers*, 301 Mich App at 610.

We decline defendant's invitation to ignore the second prong of the *Carruthers* analysis, as we are bound to apply it. Although the MMMA was amended after *Carruthers* to add certain protections relative to the medical use of usable marijuana equivalents, the statutory language interpreted in *Carruthers* remains today as it was then in all pertinent respects. *Carruthers* is therefore binding with respect to that statutory interpretation.[8] We therefore reiterate the essential holding of *Carruthers* insofar as it relates to the case before us:

> [T]he language establishing limited immunity in § 4 of the MMMA expressly conditions that immunity on the person possessing *no* amount of marijuana that does not qualify as usable marijuana under the applicable definitions. *Carruthers*, 301 Mich App at 610.

---

[8] "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1). We conclude that there is no conflict between *Carruthers* and *Manuel* because *Manuel* simply did not consider the issue that is before us in this case. *Manuel* decided only whether the marijuana in question was " 'drying,' not 'dried,' " (and therefore whether it constituted usable marijuana). While its determination that the trial court's factual finding in that regard was not clear error is binding, *Manuel*, 319 Mich App at 303; MCR 7.215(J)(1), we are not bound to repeat *Manuel*'s failure to address the second prong of the *Carruthers* analysis. On that issue, *Carruthers* controls; even if *Carruthers* were not controlling, we agree with and adopt its rationale.

In this case, defendant possessed a quantity of marijuana that, according to defendant's own argument, did not constitute usable marijuana. Consequently, under the plain language of the MMMA and *Carruthers*, defendant is not entitled to § 4 immunity.[9] The trial court was correct to follow *Carruthers* and to deny defendant's motion to dismiss under § 4 of the MMMA.[10]

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

---

[9] Our determination does not affect in any manner defendant's assertion of, or entitlement to, a defense under § 8 of the MMMA.

[10] We therefore do not reach the prosecution's alternative argument relative to the amended definition of "usable marijuana" as set forth in the MMMA.