*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT LANCE PROPP,

Defendant-Appellant.

FOR PUBLICATION
October 3, 2019
9:10 a.m.

No. 343255
Saginaw Circuit Court
LC No. 16-042719-FC

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

FORT HOOD, J.

Defendant appeals as of right his jury conviction of first-degree premeditated murder, MCL 750.316(a)(1), for which he was sentenced, as a fourth-offense habitual offender, MCL 769.12, to a mandatory term of life in prison without the possibility of parole, MCL 750.316(1). Defendant contends on appeal that (1) the trial court violated defendant's rights to due process and equal protection by denying defendant's motion for the appointment of an expert witness and denying his ability to present a defense, and (2) the trial court abused its discretion by permitting the introduction of hearsay and unduly prejudicial other-acts evidence. We affirm.

## I. BACKGROUND

It is undisputed that defendant killed the victim by constricting her airway. The sole issue is whether defendant did so with the intent to kill her, or, as defendant claims, whether the victim's death occurred accidentally while she and defendant were engaged in erotic asphyxiation.[1]  On the morning of July 6, 2016, defendant called 911 to report that he had

---

[1] This is the first Michigan case to reach this Court dealing with erotic asphyxiation as a defense to a charge of murder.  The term has been defined as "the practice of choking during a sexual encounter as a way to restrict oxygen flow and enhance sexual arousal," Boni-Saenz, *Sexual Advance Directives*, 68 Ala L Rev 1, 2 (2016), or "near suffocation . . . that heightens sexual pleasure," Comment, *The "Rough Sex" Defense*, 80 J Crim L & Criminology 557, 559 (1989).

discovered the victim unresponsive in her bed. When emergency responders arrived, they found defendant attempting to administer chest compressions to the victim. The victim's body, however, was stiff and cold to the touch, and the emergency responders informed defendant that the victim was deceased. Defendant proceeded to describe a number of different versions of the events that occurred on the night preceding and the morning of the victim's death.

At defendant's preliminary examination, an officer testified that he responded to defendant's 911 call, and testified that when he arrived on the scene, defendant told him that defendant had become concerned when the victim did not answer her phone that morning, so defendant went to the victim's house and discovered that her car was still there when she was supposed to be at work. Defendant stated that he found the backdoor of the victim's house forced open, and found the victim unresponsive in her bed. Defendant made no claims that he had choked the victim at that time. That officer also noted that defendant had a black eye, which defendant explained came from a bar fight the night before.

A second officer also spoke with defendant on the day of the victim's death. Defendant purportedly told that officer that the victim's back door had not been forced open, and that defendant himself pried the door open with a crowbar. Defendant told the officer that, on the night before the victim died, defendant and the victim were lying in the victim's bed when they began arguing. Defendant stated that the victim elbowed him in the eye, causing his black eye and a physical altercation. During the altercation, the victim fell off the bed, defendant fell on top of her, and then a dresser fell on both of them. Defendant stated that he had his hand on the victim's neck and that he "pressed down" with his weight. When the victim stopped moving, defendant figured she was unconscious, and so he picked her up, put her back on the bed, and left.

Before trial, defendant presented the argument that the victim's death was the accidental result of erotic asphyxiation. Defendant moved for the appointment of a state-funded expert witness on the practice, arguing that such an expert would assist the jury in understanding why people engage in erotic asphyxiation and its associated risks. Defendant noted as a basis for his defense that the victim did not have any defensive wounds or other injuries to suggest that she died during a struggle. The trial court denied defendant's request for appointment of such an expert, however, concluding there were no facts in the record to support defendant's assertion that the victim died as a result of erotic asphyxiation. The only facts in the record that explained the victim's injuries were defendant's statements to the police that the victim died when she and defendant fell out of bed during a fight while defendant had his hand on her throat.

The prosecution also filed their own pretrial motion, seeking to introduce evidence of defendant's prior acts of domestic violence against the victim, as well as stalking behaviors. The prosecution alleged that defendant repeatedly called and texted the victim, drove by her house, and appeared uninvited at places the victim went. The majority of the evidence of defendant's prior acts came in the form of statements the victim made to friends and family members. The prosecution also sought to introduce evidence that defendant sexually abused his ex-wife during their marriage. Defendant argued that the testimony of the victim's friends and family members was inadmissible hearsay, and that the testimony of defendant's ex-wife was inadmissible under MRE 403 because it was more prejudicial than probative. The trial court disagreed and granted the prosecution's motion to admit the evidence in its entirety.

At trial, defendant testified that, on the night that the victim died, she asked him to choke her while they had sex. In the process of doing so, defendant and the victim fell off the bed and a dresser fell on top of them. Defendant was unsure of how long he and the victim were on the floor with the dresser on top of them and his hand on her throat, but when he got up, the victim was unconscious. Defendant testified that he was not concerned about this because the victim often passed out when they engaged in erotic asphyxiation and defendant believed that she was still alive when he left her house shortly after. Defendant stated that he did not initially tell the police that he choked the victim because he was embarrassed and ashamed. The jury convicted defendant of first-degree premeditated murder and the trial court sentenced him to mandatory life without parole.

## II. DUE PROCESS

Defendant first contends that the trial court violated defendant's rights to due process by denying defendant's motion for the appointment of an expert witness and subsequently prohibiting any testimony from that witness. We disagree.

We review de novo, as an issue of constitutional law implicating a defendant's due-process rights, the trial court's grant or denial of a defendant's request for state funds to retain an expert. See *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999). We must consider whether, in light of defendant's explanation as to why the requested expert was necessary for his defense, the trial court should have determined that state funds were required to afford defendant a fair opportunity to confront the prosecution's evidence and present his defense. See *People v Kennedy*, 502 Mich 206, 226-227; 917 NW2d 355 (2018).[2]

## A. WHETHER DEFENDANT WAS ENTITLED TO A STATE-FUNDED EXPERT WITNESS

At the time that the trial court denied defendant's request for appointment of an expert witness, issues pertaining to the funding of experts at state expense were governed by MCL 775.15[3] and *People v Tanner*, 469 Mich 437, 442-443; 671 NW2d 728 (2003), overruled by

---

[2] We note the prosecution's assertion that defendant failed to establish indigence for the purpose of retaining a state-funded expert witness. Defendant was originally appointed counsel based upon his indigence, and although he later retained counsel, there is no evidence that defendant's financial circumstances changed during the pendency of the case. See *People v Arquette*, 202 Mich App 227, 230; 507 NW2d 824 (1993). We are confident that the mere retention of counsel by an indigent defendant does not deprive that defendant of the ability to seek the funding of an expert at state expense. In any event, whether or not defendant properly established indigence would not change the outcome of this case.

[3] MCL 775.15 provides, in relevant part:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the

*Kennedy*, 502 Mich at 222-223. *Tanner* held that, under MCL 775.15, "to obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Tanner*, 469 Mich at 442-443 (quotation marks omitted), citing *People v Jacobson*, 448 Mich 639, 641; 532 NW2d 838 (1995), overruled by *Kennedy*, 502 Mich at 222-223. The *Kennedy* Court recently clarified, however, "that MCL 775.15 does not apply in [the] context" of an indigent defendant's request for appointment of an expert. *Kennedy*, 502 Mich at 210.

"MCL 775.15, by its express terms, does not provide for the appointment of expert witnesses." *Id*. at 222. In addition, "the statute, which only contemplates 'testimony,' falls short of the constitutional standard set forth in *Ake*,[4] which clearly requires the assistance of an expert in conducting an appropriate examination and in evaluation, preparation, and presentation of the defense." *Id*. at 223 (quotation marks, alteration, and citation omitted). We have no doubt that *Kennedy* applies because, although *Kennedy* was decided after defendant's trial, "it is well-established that a new rule for the conduct of criminal prosecutions that is grounded in the United States Constitution applies retroactively to all cases . . . pending on direct review or not yet final." *People v Lonsby*, 268 Mich App 375, 389; 707 NW2d 610 (2005).

Following *Kennedy*, an indigent defendant's entitlement to state funds to pay for an expert is analyzed under the *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1987), due-process framework. *Kennedy*, 502 Mich at 225. Now, when a trial court analyzes an indigent defendant's request for government funds to procure an expert, it must consider the following factors:

> (1) "the private interest that will be affected by the action of the State," (2) "the governmental interest that will be affected if the safeguard is to be provided," and (3) "the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." [*Id*. at 215, quoting *Ake*, 470 US at 77.]

With respect to the first two factors, in criminal cases, both defendants and the government share an interest in "fair and accurate adjudication." *Id*. at 215-216 (quotation marks

---

jurisdiction of the court, without whose testimony he cannot safely proceed to a trial . . . and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may . . . make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people.

[4] *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985).

and citation omitted).  Accordingly, in such cases, the third factor, regarding the probable value of the requested safeguard, is typically the determinative factor as to whether the defendant is entitled to government funds to obtain an expert.  See *id*. at 216-220.  In terms of the showing that the defendant must make under this factor, *Kennedy* adopted the reasonable probability standard articulated in *Moore v Kemp*, 809 F2d 702 (CA 11, 1987).  *Id*. at 226.  *Moore* held:

> [I]f a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. *By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense . . . .*  In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed.  In addition, the defendant should inform the court why the particular expert is necessary.  [*Moore*, 809 F2d at 712 (emphasis added).]

In particular, *Kennedy* held that, in order to be entitled to government funds to obtain an expert, "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial."  *Kennedy*, 502 Mich at 228 (quotation marks and citation omitted).

In this case, defendant sought appointment of an expert in order to assert the affirmative defense that the victim died accidentally while she and defendant engaged in erotic asphyxiation. Accordingly, defendant was required to demonstrate a "substantial basis for the defense."  See *Moore*, 809 F2d at 712.  Defense counsel argued that there was a basis for the defense because, although the victim unequivocally died from neck compression, she did not have defensive wounds indicative of a struggle.  Defense counsel further argued that an expert would "give some validity to" defendant's claim that he was not particularly concerned when the victim lost consciousness because people who engage in erotic asphyxiation often lose consciousness during the act.

The trial court determined that defendant failed to demonstrate a factual basis for the defense because there was no evidence that the victim's death occurred as a result of erotic asphyxiation.  The record supports that conclusion.  At the time that defendant moved for appointment of an expert, the only evidence in the record that defendant had choked the victim came from his statement to Detective Joseph McMillan.  In that statement, defendant admitted that he and the victim got into a fight, during which the victim fell off the bed, defendant fell on top of her, and a dresser fell on top of both of them.  Defendant did not make any statements during any of his police interviews that the victim's injuries were the result of erotic asphyxiation.  Moreover, the testimony of the victim's sister suggested that defendant and the victim were not getting along at the time of the victim's death, that defendant had engaged in stalking behaviors—including coming to the victim's home and knocking on her windows at

night—and that defendant's behavior was "escalating very fast." Another sister of the victim testified that the victim once told her that the victim was "going to die young," and when the sister asked why, the victim responded, "I don't know, maybe [defendant] will kill me."

Other testimony in evidence relating to the prosecution's motion in limine indicated that witnesses had seen multiple altercations between the victim and defendant. Two witnesses testified that they once saw defendant chase the victim down the road in a car, seemingly attempting to run her off the road. One witness observed injuries on the victim's arms, neck, and face shortly before the victim decided to break up with defendant. Another witness testified that the victim once told her that the defendant "chocked her, and [the victim] didn't think he was going to stop, [and] she was starting to see spots when he finally let her go." According to that witness, while defendant was choking the victim, he stated, "see how easy it would be for me to shut you up[?]"

For the trial court to conclude that there was a substantial basis for the erotic asphyxiation defense, the trial court would have been required to ignore a significant amount of evidence from other witnesses that supported defendant's own contradictory statement that he choked the defendant while the two were fighting. Given the significant evidence in the record at the time, defendant's mere assertion that the victim's death was the result of erotic asphyxiation—an assertion that was made for the first time well over a year after the investigation and proceedings in this case were initiated— was not sufficient to provide a substantial basis for the defense such that a state-funded expert was necessary. See *Kennedy*, 502 Mich at 227, citing *Moore*, 809 F2d at 712. Notwithstanding, assuming for the sake of argument that defendant should have been entitled to an expert witness, we note that the denial of an expert did not result in a fundamentally unfair trial.

## B. WHETHER BARRING DEFENDANT'S EXPERT RESULTED IN A FUNDAMENTALLY UNFAIR TRIAL

Defendant contends that denial of his motion for a state-funded expert and the prohibition of testimony from that expert barred defendant from presenting a meaningful defense and resulted in a fundamentally unfair trial. We disagree.

As an initial matter, defendant has arguably waived any suggestion that his trial was unfair because he was denied a meaningful opportunity to present a defense. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (quotation marks and citation omitted). Waiver "extinguishe[s] any error," and "[o]ne who waives his rights . . . may not then seek appellate review of a claimed deprivation of those rights . . . ." *Id.* (quotation marks and citation omitted). In this case, the trial court denied defendant's request for funds to retain an expert witness on the practice of erotic asphyxiation and prohibited defendant from presenting such expert testimony. Before trial began, the prosecution objected to defendant's proposed witness, Dr. Zubin Mistry, "based on the court's prior ruling," and the trial court stated that the witness would not "be allowed to be called at this point in time." Defense counsel stated, "we understand that we have to develop evidence to justify th[e] expert witness being called, but we are assuming that we will," and the trial court responded, "We'll cross that bridge when we get to it." Thereafter, defendant never sought to call Dr. Mistry or any other expert witnesses.

By failing to call an expert witness, despite the trial court's indication that it would consider defendant's ability to do so after defendant established a basis for that testimony, defendant waived his claim that he was denied the opportunity to present a defense. See *Carter*, 462 Mich at 215. Despite defendant's apparent waiver, under the circumstances—including the possibility that defendant could not call the expert for financial reasons after state-funding was denied, the constitutional implications of this case, and the gravity of the offense—we elect to reach the merits of the argument, and note that the record establishes that an additional expert was not necessary for defendant to present his claim that the victim died from erotic asphyxiation.

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). The Due Process Clause of the Fourteenth Amendment "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (quotation marks and citation omitted). The right to present a defense encompasses "[t]he right to offer the testimony of witnesses," *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967), as well as defense counsel's ability "to argue a reasonable inference from evidence adduced at trial," *People v Stokes*, 312 Mich App 181, 207; 877 NW2d 752 (2015), vacated in part on other grounds 501 Mich 918 (2017). The right to present a defense further protects a defendant's ability to "put before a jury evidence that might influence the determination of guilt," and to have access to exculpatory evidence. *Anstey*, 476 Mich at 460.

In this case, defendant fails to explain how he was denied a meaningful opportunity to present his defense because defendant was, in fact, able to present the exact defense he sought to introduce through an expert. Defense counsel stated during his opening statement that defendant and the victim engaged in erotic asphyxiation, the victim lost consciousness—which "wasn't unusual for her"—and it appeared to a layperson that the victim was still breathing. Defendant then testified at length to all of those things. Defendant testified about the manner in which he and the victim engaged in erotic asphyxiation on the night of her death and why. Defendant also testified that the victim asked him to choke her. Defendant explained that he was not concerned when the victim lost consciousness because it was a "normal" occurrence when defendant and the victim engaged in that form of "extreme sex." Defendant further explained that he did not tell the police that he and the victim engaged in erotic asphyxiation on the night she died because he "was ashamed," because he did not want to expose the "sex that [they] had," because defendant was "very conservative" with respect to talking about his sexual life, and because the victim "wanted it to be that way."

Moreover, defense counsel was able to continue to present the defense through the prosecution's expert pathologist. When asked by defendant's counsel whether, under the circumstances, the victim's death could have resulted from erotic asphyxiation, the expert pathologist stated, "Yeah, it's possible." Defense counsel then referenced the exchange in his closing argument. We note that, in his motion for appointment of an expert, defendant claimed that an expert was also necessary to explain to the jury the prevalence of erotic asphyxiation, why a person would engage in it, and the reality of participants passing out or even dying from the practice. However, although defense counsel cross-examined the prosecution's expert pathologist regarding erotic asphyxiation and he testified that he was familiar with the practice,

defense counsel notably did not attempt to elicit any testimony from the expert pathologist related to the above ideas. He asked no questions regarding what erotic asphyxiation involves, why people might engage in the activity, how common it is, or how often it results in injury or death.

Defendant does not argue that his trial counsel was ill prepared or ineffective, nor does defendant provide any reason why the prosecution's expert pathologist, who was familiar with erotic asphyxiation, could not explain the practice. As such, we note that defendant has failed to establish that another expert witness would have provided defendant with evidence beyond what was available through the prosecution's expert pathologist. Defendant failed to establish that the trial court's denial of a state-funded expert witness deprived defendant of the opportunity to present his erotic asphyxiation defense, and failed to establish that either the denial of his motion or the initial prohibition of expert testimony on erotic asphyxiation resulted in a fundamentally unfair trial.

## II. EQUAL PROTECTION

Defendant also suggests on appeal that the requirement that he establish a substantial basis for his defense in order to be entitled to expert funds violated his right to equal protection because nonindigent defendants are not required to make a similar showing before presenting the testimony of retained experts. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). Defendant raises his equal protection challenge for the first time on appeal, and, accordingly, his claim is unpreserved. This Court reviews an unpreserved claim of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to demonstrate reversible error, the defendant must show that an error occurred, that the error was clear and obvious, and that the error prejudiced the defendant such that the error "affected the outcome of the lower court proceedings." *Id.*

Neither this Court nor our Supreme Court has held that requiring an indigent defendant to demonstrate a substantial basis for his defense before he is entitled to state funds to procure an expert violates equal protection. To the contrary, *Kennedy* concluded that "the standard articulated in *Moore* strikes the right balance between requiring too much or too little of a defendant seeking the appointment of an expert . . . ." *Kennedy*, 502 Mich at 227-228. Moreover, we note that, other than alleging a violation of equal protection in his statement of questions presented on appeal, there is actually no application of the clause or the substantial jurisprudence surrounding it in defendant's brief.

Defendant references *Ake* for the idea that, "simply as a result of his poverty, a defendant [cannot be] denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake*, 470 US at 76. Defendant also cites *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997), for the idea that "fundamental fairness requires that the state not deny [indigent defendants] an adequate opportunity to present their claims fairly within the adversary system." (Quotation marks omitted.) Both of these statements were in reference

to the Due Process Clause. *Ake*, 470 US at 76; *Leonard*, 224 Mich App 569. And, as noted in *Ake*, although due process and equal protection are related, they involve separate inquiries. *Ake*, 470 US at 76 n 3.

We also note defendant's singular citation to *People v Loyer*, 169 Mich App 105, 123-124; 425 NW2d 714 (1998). We are aware of *Loyer*'s holding that, within the context of MCL 775.15, it was a violation of equal protection for a trial court to require an indigent defendant seeking witness fees to disclose, "in the presence of the prosecution, the names and addresses of the witnesses, as well as why such witnesses [were] material to his cause . . . ." *Id*. at 124. As explained in detail above, MCL 775.15 does not apply to this case, and while we would concede that a defendant is not required to present his case to the prosecution in order to obtain appointment of an expert witness, there is no doubt that defendant is at least required to establish a substantial basis for his defense. *Kennedy*, 502 Mich at 227.

In any event, "it is not the duty of this Court to discover and rationalize the basis for defendant's claims." *People v Jurewicz*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342193); slip op at 8, citing *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "[N]or may [a defendant] give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. With all of the above in mind, defendant has not established plain error with respect to his equal protection claim, let alone a prejudicial error that affected the outcome of the proceedings, and he is not entitled to relief on equal protection grounds.

## III. MCL 768.27b AND THE MICHIGAN RULES OF EVIDENCE

Defendant lastly contends that the trial court abused its discretion by permitting the introduction of hearsay and unduly prejudicial other-acts evidence. Defendant challenges the admission of other-acts evidence of domestic violence on two bases; first, he claims that MCL 768.27b(1) does not allow the admission of hearsay evidence, and second, he claims that evidence presented by defendant's ex-wife was substantially more prejudicial than probative. We disagree with defendant's interpretation of MCL 768.27b(1), and conclude that the statute permits the introduction of certain hearsay statements so long as they satisfy the balancing test of MRE 403. We also disagree that the evidence presented by defendant's ex-wife was unduly prejudicial.

With respect to defendant's first argument—that a number of the witnesses' statements at trial were inadmissible hearsay—we conclude that MCL 768.27b allows for such testimony. We review questions of statutory interpretation de novo. *People v Mansour*, 325 Mich App 339, 345; 926 NW2d 26 (2018). "[O]ur goal in interpreting a statute 'is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language.' " *People v Hardy*, 494 Mich 430, 439, quoting *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). "If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *People v Perry*, 317 Mich App 589, 604; 895 NW2d 216 (2016) (quotation marks and citation omitted).

This Court also reviews de novo the "preliminary question of law, which is whether a rule of evidence precludes admissibility . . . ." *People v McDaniel*, 469 Mich 409, 412; 670

NW2d 659 (2003). This Court reviews a "trial court's admission of evidence of other bad acts for an abuse of discretion. A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2007) (citation omitted). In order to be entitled to relief for a preserved nonconstitutional error, the defendant must establish "that it is more probable than not that the error was outcome-determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

MCL 768.27b(1) provides, in pertinent part:

[I]n a criminal action in which the defendant is accused of an offense involving domestic violence . . . , evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

This "prior-bad-acts evidence of domestic violence can be admitted at trial because a full and complete picture of a defendant's history tends to shed light on the likelihood" that a domestic violence crime was committed. *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011) (quotation marks, alterations, and citation omitted). Under, MCL 768.27b, evidence of a defendant's prior bad acts of domestic violence is admissible "as long as the evidence satisfies the 'more probative than prejudicial' balancing test of MRE 403 . . . ." *Id*.

Defendant primarily contends that MCL 768.27b must be read *in pari materia* with MCL 768.27a and MCL 768.27c. MCL 768.27a provides, in relevant part, "Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). MCL 768.27c, on the other hand, authorizes the admission of hearsay statements related to the "infliction or threat of physical injury upon the declarant" in cases in which the defendant is accused of an offense involving domestic violence. MCL 768.27c(1).

Defendant argues that reading MCL 768.27b in the context of its sister statutes requires a determination that other-acts evidence admissible under MCL 768.27b is still subject—in addition to MRE 403—to hearsay evidentiary rules. Indeed, we have noted that, because of the similarities in the language of MCL 768.27a and 768.27b, "we believe that the Michigan Legislature intended the same policy" considerations to underlie both statutes. *Cameron*, 291 Mich App at 609-610. However, more recently, in holding that evidence admissible under MCL 768.27a—which involves the admission of other-acts offenses committed against minors—*was* subject to "other ordinary rules of evidence, such as those pertaining to hearsay and privilege," our Supreme Court specifically distinguished MCL 768.27a from MCL 768.27b. *People v Watkins*, 491 Mich 450, 485; 818 NW2d 296 (2012).

In *Watkins*, the primary issue was whether, like MCL 768.27b, evidence generally admissible under MCL 768.27a was also subject to exclusion under MRE 403. *Id*. at 480. In determining that MCL 768.27a was not only subject to MRE 403, but also to the other rules of evidence, our Supreme Court reasoned:

The argument against applying MRE 403 to evidence admissible under MCL 768.27a comes not from the text of either MRE 403 or MCL 768.27a, but from the text of MCL 768.27b, which pertains to other-acts evidence in domestic violence cases. MCL 768.27b provides that "evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, *if it is not otherwise excluded under Michigan rule of evidence 403*." It is this emphasized portion of the statute that has generated disagreement surrounding whether MRE 403 applies to MCL 768.27a.

Unlike MCL 768.27b, MCL 768.27a does not explicitly mention MRE 403 . . . . Accordingly, it is argued that if the Legislature expressly made other-acts evidence under MCL 768.27b subject to MRE 403 in cases of domestic violence, then the failure to mention MRE 403 in MCL 768.27a indicates that the Legislature did not intend MRE 403 to apply with regard to other-acts evidence in cases involving sexual misconduct against minors. We reject the invitation to draw this inference.

Significantly, the Legislature did not draft these statutes simultaneously. MCL 768.27a was enacted by 2005 PA 135, which became effective January 1, 2006, whereas MCL 768.27b was enacted by 2006 PA 78, which became effective March 24, 2006. The Legislature's "silence" from which it is urged we draw an inference occurred in the earlier enactment. It is one thing to infer legislative intent through silence in a simultaneous or subsequent enactment, but quite another to infer legislative intent through silence in an earlier enactment, which is only "silent" by virtue of the subsequent enactment. [*Id*. at 481-482 (footnote omitted and alterations in original).]

The Court ultimately noted that, "because MCL 768.27a makes no specific mention of MRE 403 . . . the Legislature intended that MRE 403 not apply to other-acts evidence admissible under the statute." *Id*. at 483. Had the Legislature intended otherwise, it "could have expressly exempted evidence admissible under MCL 768.27a from analysis under MRE 403, but it did not." *Id*. In this case, defendant would have us conclude the same with respect to MCL 768.27b, and hold that, if the Legislature intended MCL 768.27b to permit the admission of hearsay statements, the Legislature could have expressly exempted evidence admissible under the statute from analysis under the hearsay rules of evidence. As it happens, however, the Legislature did just that.

The *Watkins* Court went on to express additional differences between MCL 768.27a and MCL 768.27b:

Despite some similarities, there are notable differences between the two statutes.

First, the Legislature used the permissive term "may" in MCL 768.27a but not in MCL 768.27b. Under MCL 768.27a, "evidence that the defendant committed another listed offense against a minor *is admissible*," but the statute goes on to provide that such evidence "*may* be considered for its bearing on any matter to which it is relevant." When the statute is read as a whole, the phrase "is admissible" is qualified by the phrase "may be considered," thereby indicating

that admissibility remains subject to some level of discretion on the part of the trial court. As this Court has explained, "courts should give the ordinary and accepted meaning to . . . the permissive word 'may' unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." [*Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982).] Because there is no indication in MCL 768.27a that "may" should be interpreted contrary to its generally accepted meaning, the term is permissive, not mandatory. By providing that evidence admissible under MCL 768.27a "may be considered," the Legislature necessarily contemplated that evidence admissible under the statute need not be considered in all cases and that whether and which evidence would be considered would be a matter of judicial discretion, as guided by the rules of evidence. The most obvious rule available to guide courts in exercising this discretion is MRE 403.

By contrast, MCL 768.27b contains no permissive language. MCL 768.27b(1) simply provides that "evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant . . . ." Perhaps it was [its] choice to omit the permissive language [from MCL 768.27b] that prompted the Legislature to qualify the admissibility of other-acts evidence under MCL 768.27b with the language "if it is not otherwise excluded under Michigan rule of evidence 403." [*Id.* at 483-484.]

In other words, with the language of MCL 768.27a in mind, because MCL 768.27b contains no permissive language, it would seem the Legislature intended to limit the discretion of the trial court to exclude evidence under the statute. The *only* limiting provision of MCL 768.27b is that the evidence is still subject to analysis under MRE 403, and importantly for the purposes of this case, the Legislature explicitly chose to include MRE 403 as a limiting rule of evidence and chose *not* to include any other rules of evidence.

An analogous situation was also true in *Watkins*:

Second, we must give effect to the prefatory clause "[n]otwithstanding [MCL 768.27]" contained in MCL 768.27a but absent from MCL 768.27b. MCL 768.27a provides, "Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." The specific mention of MCL 768.27, and no other rule or principle of evidence, is significant.

* * *

Giving effect to the statute's reference to MCL 768.27, MCL 768.27a means that other-acts evidence in cases involving sexual misconduct against a minor "may be considered for its bearing on any matter to which it is relevant" notwithstanding that MCL 768.27 limits the admissibility of other-acts evidence to consideration for noncharacter purposes. MCL 768.27a does not apply

-12-

"notwithstanding any rule or principle of evidence," but only "[n]otwithstanding [MCL 768.27]." Put simply, we cannot interpret the prefatory phrase "[n]otwithstanding [MCL 768.27]" to mean "notwithstanding [MCL 768.27] and MRE 403." We similarly refuse to read into MCL 768.27a a legislative intent to foreclose the application of other ordinary rules of evidence, such as those pertaining to hearsay and privilege.

In sum . . . we must give effect to the permissive term "may" and the phrase "[n]otwithstanding [MCL 768.27]" that are present in MCL 768.27a but absent from MCL 768.27b. For all these reasons, we hold that MRE 403 applies to evidence admissible under MCL 768.27a. [*Id*. at 483-486 (alterations in original).]

In *Watkins*, our Supreme Court was clear that we could not rob MCL 768.27a's reference to MCL 768.27 of its meaning by holding that, while MCL 768.27a was explicitly unaffected by MCL 768.27, it was implicitly unaffected by the rules of evidence. The same logic applies to MCL 768.27b. The statute says evidence is admissible unless "otherwise excluded under Michigan rule of evidence 403," not that evidence is admissible unless "otherwise excluded under any rule of evidence." Thus, while we agree that MCL 768.27b and MCL 768.27a should be read *in pari materia*, we disagree with defendant's reading of the statutes.

Defendant also notes that we must consider MCL 768.27b within the context of MCL 768.27c. Defendant contends that our interpretation of the former will render the latter nugatory. We disagree.

MCL 768.27c provides, in pertinent part:

(1) Evidence of a statement by a declarant is admissible if all of the following apply:

 (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

 (b) The action in which the evidence is offered under this section is an offense involving domestic violence.

 (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

 (d) The statement was made under circumstances that would indicate the statement's trustworthiness.

 (e) The statement was made to a law enforcement officer. [MCL 768.27c(1).]

Indeed, as defendant notes in his brief on appeal, MCL 768.27c explicitly authorizes the admission of hearsay statements related to "infliction or threat of physical injury upon the declarant" in cases in which the defendant is accused of an offense involving domestic violence.

-13-

However, unlike MCL 768.27b, for statements to be admissible under MCL 768.27c, the statements must have been "made at or near the time of the infliction or threat of physical injury," "under circumstances that would indicate the [their] trustworthiness," and must have been "made to a law enforcement officer." MCL 768.27c(1)(c), (d), and (e). Defendant aptly notes that the conditions contained in MCL 768.27c(1) provide safeguards to ensure the trustworthiness of hearsay statements admitted under the statute, while MCL 768.27b(1) provides none of the same precautions. Defendant suggests that, if hearsay statements are admissible under MCL 768.27b, MCL 768.27c serves no purpose.

Defendant ignores an important difference between the two statutes. MCL 768.27b applies in cases of domestic violence to other-acts evidence that *also* involve domestic violence. MCL 768.27b(1). On the other hand, MCL 768.27c permits a wider range of statements to be introduced in domestic violence cases: statements involving the narration, description, or explanation of "the infliction or threat of physical injury upon the declarant." MCL 768.27c(1)(a). One statute applies to evidence of domestic violence in domestic violence cases, and one statute applies to evidence of *general physical violence* in domestic violence cases. There is sound logic in the Legislature's decision to provide for broad admissibility under the former rule while constraining the latter to assure the reliability of evidence of other-acts of *general physical violence* because those acts tend to be less relevant than other-acts of *domestic violence* in establishing a defendant's propensity to commit *acts of domestic violence*. See *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010) (noting that MCL 768.27b supersedes MRE 404(b)(1)'s prohibition on other-acts evidence to show the defendant's propensity to commit a domestic violence offense).

We also note that defendant's argument with respect to MCL 768.27c contains an inherent contradiction. Defendant concedes that general hearsay rules of evidence do not apply to evidence admissible under MCL 768.27c, and argues that fact as a primary reason MCL 768.27b *should* remain subject to hearsay rules. However, both MCL 768.27b and MCL 768.27c lack the permissive language of MCL 768.27a that might afford a trial court discretion to exclude evidence otherwise admissible under the statutes, and what is more, MCL 768.27c does not contain language to ensure that evidence admissible under the statute is also subject to any other court rule, such as MRE 403. Accepting defendant's interpretation of MCL 768.27c at face value—that by its plain language, the statute is not subject to hearsay rules—defendant gives no logical explanation of how we could interpret the plain language of MCL 768.27b—which explicitly incorporates *only* MRE 403—any differently.

Given all of the above, we conclude that the Legislature intended for evidence to be admissible under MCL 768.27b regardless of whether it might be otherwise inadmissible under the hearsay rules of evidence.[5] Having concluded that MCL 768.27b permits the admission of a

---

[5] As an aside, and although defendant does not raise the issue on appeal, we note that our holding does not render MCL 768.27b unconstitutional pursuant to Const 1963, art 6, § 5 by impeding the Supreme Court's authority to establish, modify, amend and simplify the practice and procedure in the courts of this state. In *Watkins*, our Supreme Court noted:

-14-

certain category of hearsay statements in cases involving domestic violence, and with defendant raising no other argument with respect to the hearsay statements admitted at his trial, we need not address whether they were admissible under MRE 403. We conclude that the trial court made no errors of law in admitting the statements and did not abuse its discretion.

Defendant does argue, however, that testimony from his ex-wife that defendant sexually assaulted her during the course of their marriage was inadmissible under MRE 403. Defendant claims that this evidence was substantially more prejudicial than probative given the dissimilarity between defendant's assaults on his ex-wife and the facts of this case, particularly in light of the fact that the prosecution did not allege in this case that the victim was sexually assaulted. We disagree.

MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

With respect to specifically analyzing other-acts evidence admitted pursuant to MCL 768.27b under the MRE 403 balancing test, we have held:

[T]his Court must make two distinct inquires under the balancing test of MRE 403. First, this Court must decide whether introduction of [the defendant's] prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing [the defendant's] prior bad acts into evidence. [*Cameron*, 291 Mich App at 611 (quotation marks and citation omitted).]

Notably, "[e]vidence offered against a criminal defendant is, by its very nature, prejudicial to some extent." *People v Meissner*, 294 Mich App 438, 451; 812 NW2d 37 (2011) (quotation marks and citations omitted). Unfair prejudice, however, specifically "refers to the tendency of

---

[S]tatutory rules of evidence that reflect policy considerations limited to "the orderly dispatch of judicial business," i.e., court administration, are procedural and violate Const 1963, art 6, § 5. But statutory rules of evidence that reflect policy considerations "over and beyond matters involving the orderly dispatch of judicial business" are substantive, and in the case of a conflict with a court rule, the legislative enactment prevails. [*Watkins*, 491 Mich at 474.]

With respect to MCL 768.27b, the Legislature clearly had policy concerns relevant to domestic violence cases that went beyond the orderly dispatch of judicial business, and the statute is therefore constitutional as a substantive rule of evidence. *See id*. at 473-475.

the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citations omitted). This Court has held that, while the testimony of a defendant's former girlfriends "about [the] defendant's physical abuse and threats to kill them . . . was certainly damaging and prejudicial," it was also "highly relevant to show [the] defendant's tendency to assault [the victim] as charged," and therefore admissible. *Railer*, 288 Mich App at 220-221.

In this case, the ex-wife's testimony did not inject extraneous considerations and was highly relevant. See *Cameron*, 291 Mich App at 611. The ex-wife testified that, at one point in their roughly 11-month relationship, defendant sexually assaulted her on a weekly basis. She testified that defendant was verbally abusive, and that after the ex-wife and defendant divorced, defendant began engaging in stalking behaviors, even once attempting to break into the ex-wife's home by prying her basement window open with a knife. These allegations were highly relevant and probative because they spoke directly to defendant's propensity to commit domestic violence against women, particularly women with which he is in a relationship. See *id*. at 219. Moreover, even assuming arguendo that this evidence was unduly prejudicial, there was a substantial amount of other evidence that defendant committed domestic violence against the victim, including defendant's *own admissions* to the police that he choked the victim during a fight. In light of all of the evidence, defendant has not established that, to the extent that his ex-wife's testimony was unduly prejudicial, it was also more probable than not that it was outcome-determinative. Accordingly, defendant is not entitled to relief. See *Lukity*, 460 Mich at 496.

## IV. CONCLUSION

The trial court did not err by denying defendant's request for appointment of an expert on the practice of erotic asphyxiation because defendant failed to show the trial court that he had a substantial basis for that defense. Defendant further failed to establish that denial of his motion to appoint an expert witness denied him the ability to present a defense and led to a fundamentally unfair trial. With respect to his vague equal protection claim, defendant failed to flesh out his arguments with citation to appropriate legal authority, and failed to establish plain error. We also conclude as a matter of first impression that MCL 768.27b permits the admission of hearsay statements that fall within the scope of the statute, and the trial court therefore did not abuse its discretion in admitting hearsay statements under the same. Finally, the testimony of defendant's ex-wife was highly probative, but even assuming it was unduly prejudicial, defendant cannot show that it was more probable than not that the error was outcome-determinative.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Patrick M. Meter