*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 7, 2020

v

DARNELL JOHWAN SHAW,

Defendant-Appellant.

No. 346364
Macomb Circuit Court
LC No. 2018-000043-FC

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to a within the minimum guidelines sentence of 140 to 300 months' imprisonment. We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

## I. BACKGROUND

This case arises out of an armed robbery at a Walgreens located in Fraser, Michigan. The victim, who was working as a cashier at the store, testified that, while she was working behind the register, defendant approached the counter with a pack of light bulbs and asked for a pack of Newport cigarettes. When prompted by the victim to enter his rewards card information, defendant responded that his girlfriend had one in her car and momentarily left the store to retrieve it. Defendant then reentered the store, returned to the counter, and said, "[S]horty I ain't [sic] play with you, just give me all the money." The victim testified that defendant lifted his shirt and revealed what looked to her like a silver-colored gun. The victim placed the cash register drawer on the counter, and defendant proceeded to take the money and cigarettes before he ran away. The victim identified defendant at trial as the individual who stole the money and cigarettes. Store security camera footage of the robbery was played for the jury. At trial, defendant's theory of the case was that he did commit a robbery, but there was no evidence that he either possessed or implied that he possessed a gun, so he did not commit *armed* robbery. The victim testified at trial that defendant said to her that he had a gun; but defense counsel established that when the victim

-1-

previously testified at the preliminary examination, she specifically denied that defendant ever said anything about a gun or any other kind of weapon.

## II. JUROR MISCONDUCT

Defendant first argues that he was denied his right to a fair and impartial jury because of certain comments made by one of the jury members. We disagree. We review de novo whether a defendant was denied their constitutional right to an impartial jury, and we review for clear error any underlying factual findings made by the trial court. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). "Before this Court will order a new trial on the ground of juror misconduct, some showing must be made that the misconduct affirmatively prejudiced the defendant's right to a trial before an impartial and fair jury." *People v Fetterley*, 229 Mich App 511, 545; 583 NW2d 199 (1998).

Both the United States Constitution and Michigan Constitution protect a criminal defendant's right to be tried by an impartial jury. US Const, Am VI; Const 1963, art I, § 20; *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). Jurors are presumed to be impartial. *Miller*, 482 Mich at 550. The defendant bears the burden of establishing "that the juror was not impartial or at least that the juror's impartiality was in reasonable doubt." *Id*. "A juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury." *Id*. at 548. A juror's "misconduct must be such as to reasonably indicate that a fair and impartial trial was not had[.]" *Id*. at 549 (quotations omitted). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*.

Defendant argues that this case is factually identical to the United States Supreme Court case of *Peña-Rodriguez v Colorado*, __ US __; 137 S Ct 855; 197 L Ed 2d 107 (2017). In *Peña-Rodriguez*, the Supreme Court discussed "the no-impeachment rule," which generally precludes a jury's verdict, once entered, from later being "called into question based on the comments or conclusions [the jurors] expressed during deliberations . . . either by affidavit or live testimony." *Id*. at __; 137 S Ct at 861, 864; see also *People v Fletcher*, 260 Mich App 531, 539; 679 NW2d 127 (2004). However, the no-impeachment rule must "give way" if "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Id*. at __; 137 S Ct at 869.[1] Defendant argues that the exception articulated in *Peña-Rodriguez* is directly applicable here. We disagree.

In *Peña-Rodriguez*, the jury found the petitioner guilty of unlawful sexual contact and harassment. *Peña-Rodriguez*, __ US at __; 137 S Ct at 861. After the jury rendered its verdict, the trial court discharged the jury. *Id*. The petitioner's counsel entered the jury room to discuss the trial and, while the room was emptying, two jurors remained to speak with the petitioner's

---

[1] An exception also exists "where there is evidence to suggest the verdict was affected by influences external to the trial proceedings," but no such "impermissible extrinsic evidence" is suggested here. See *Fletcher*, 260 Mich App at 539.

counsel. *Id*. The jurors stated that "another juror had expressed anti-Hispanic bias toward petitioner and petitioner's alibi witness." *Id*. The petitioner's counsel received affidavits from the jurors, which expressed that "Juror H.C." had "believed the defendant was guilty because, in [H.C.'s] experience as an ex-law enforcement officer, Mexican men had a bravado that caused them to believe they could do whatever they wanted with women." *Id*. at __; 137 S Ct at 862 (quotation marks omitted; alteration in original). The affidavits further stated that Juror H.C. believed that the petitioner was guilty "because he's Mexican and Mexican men take whatever they want." *Id*. (quotation marks omitted).

Thus, *Peña-Rodriguez* is factually distinct in an important way from the instant matter. *Peña-Rodriguez* involved a juror's racial animus during jury deliberations, whereas this case involved comments made by one of the jurors during a break in the trial itself. It was evident in *Peña-Rodriguez* that Juror H.C. actually convicted the petitioner on the basis of the petitioner's race. Importantly, the juror who made racial comments in this case was not involved in the deliberations or verdict. Instead, the comments in question were made before the jury verdict and even before jury deliberations began. Before the start of the second day of trial, one juror came forward about the comments the other juror made to him. The trial court and attorneys questioned the juror who came forward, and the juror stated that he could remain impartial. The trial court then questioned the juror who made the comments and, after the juror admitted to having made the comments, discharged that juror from the jury. Consequently, the exception to the no-impeachment rule is not implicated, because the racially-biased juror did not take part in deliberations, so there was no "statement that indicate[d the jury] relied on racial stereotypes or animus to convict a criminal defendant." *Peña-Rodriguez*, __ US at __; 137 S Ct at 869. Furthermore, nothing in the record suggests that the discharged juror's comments affected any other jurors. Indeed, the record suggests the opposite: as the trial court observed, any other jurors who overheard the improper comments "basically shun[ned]" the discharged juror.

Accordingly, defendant cannot establish that the comments affected the impartiality of the jury and we need not grant a new trial. Relatedly, because there is no merit to defendant's contention that he did not receive a fair and impartial jury, defense counsel was not ineffective for failing to raise a futile objection or move for a mistrial that would not have properly been granted. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant asserts that he received ineffective assistance of counsel because defense counsel essentially admitted guilt to armed robbery by admitting defendant was guilty of unarmed robbery. Specifically, defendant contends that defense counsel erred by focusing narrowly on whether defendant actually possessed a gun, failing to realize that armed robbery only requires a reasonable belief that defendant possessed a gun. We disagree.

Determining whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews findings of facts for clear error and questions of law de novo. *Id*. Defendant preserved his claim of ineffective assistance of counsel by filing a motion asking this Court to remand for a *Ginther* hearing. See *People v Ginther*, 390 Mich 436, 442-443, 212 NW2d 922 (1973); *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Because we

denied the motion and a *Ginther* hearing has not been held, our review of his counsel's effectiveness is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, our denial of defendant's motion to remand was without prejudice, and we are mindful that, upon review of the entire record, a *Ginther* hearing may yet prove to be warranted. For the purpose of determining whether to remand for a *Ginther* hearing, we may consider evidence presented by defendant even if it is not part of the record. See *People v Moore*, 493 Mich 933; 825 NW2d 580 (2013).

In order to receive a new trial on the basis of ineffective assistance of counsel, defendant "must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010) (quotation marks and citation omitted); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is afforded wide latitude on matters of trial strategy, and we will not substitute our judgment for that of defense counsel, review the record with the added benefit of hindsight on such matters, or second-guess defense counsel's judgment on matters of trial strategy. See *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

As a general matter, there is nothing inherently unsound about a trial strategy of admitting to guilt of a lesser offense. *People v Matuszak*, 263 Mich App 42, 60-61; 687 NW2d 342 (2004); *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

> Where the evidence obviously points to defendant's guilt, it can be better tactically to admit to the guilt and assert a defense or admit to guilt on some charges but maintain innocence on others. Such a trial tactic may actually improve defendant's credibility and will not be second-guessed. [*People v Walker*, 167 Mich App 377, 382; 422 NW2d 8 (1988), overruled in part on other grounds by *People v Mitchell*, 456 Mich 693, 698; 575 NW2d 283 (1998).]

As defendant concedes, where defense counsel "recognizes and candidly asserts the inevitable, he is often serving his client's interests best by bringing out the damaging information and thus lessening the impact." *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984). Conversely, defendant is also correct that a total concession of guilt by defense counsel without the defendant's consent generally constitutes ineffective assistance of counsel. *People v Krysztopaniec*, 170 Mich App 588, 595-596; 429 NW2d 828 (1988). Consequently, we will not second-guess defense counsel's decision to concede unarmed robbery in favor of disputing the essential element distinguishing unarmed robbery from armed robbery.

Defendant contends that trial counsel did, in effect, totally concede defendant's guilt of armed robbery. As discussed, defendant contends that trial counsel focused narrowly on the lack of physical evidence that he actually had a gun. Defendant observes that the armed robbery statute, MCL 750.529, provides:

A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner *to lead any person present to reasonably believe the article is a dangerous weapon*, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony. [Emphasis added.]

Thus, armed robbery does not necessarily require an actual gun or any actual dangerous weapon. See *People v Chambers*, 277 Mich App 1, 8-9; 742 NW2d 610 (2007). Defendant argues that counsel knew that the security video footage clearly showed defendant lifting his shirt while telling the victim to give him the money, that the victim believed she saw defendant to have a gun, and that a social media photograph apparently[2] depicted defendant with a gun at around the time of the robbery. Defendant concludes that it was therefore "pointless" for counsel to focus on whether defendant actually had a gun.

We disagree. Initially, defendant's argument appears to presuppose that the jury was obligated to accept the above evidence and to draw one particular conclusion on the basis of that evidence. However, juries are not required to believe any evidence at all, even stipulated evidence. See *People v White*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346901, slip op at p 5). Thus, although it might be a difficult task, the possibility always remained that defense counsel could persuade the jury that the above evidence was unworthy of belief, or that the jury should infer an alternative conclusion on the basis of the evidence. In any event, counsel did specifically argue to the jury that defendant never presented *or implied* a gun during the robbery. Thus, counsel properly did not focus narrowly on whether there was an actual gun to the exclusion of all else.

Counsel relied on evidence that defendant may have been wearing a black belt with a shiny buckle, and nothing that looked like a gun could be seen in the store security videos. As noted above, although the victim testified at trial that defendant said he had a gun, the victim previously testified at the preliminary examination that defendant never made any spoken reference to a gun or any other weapon. We do not think counsel is obligated to prognosticate that a witness would significantly change their testimony. Nevertheless, during a vigorous cross-examination, counsel elicited the above contradiction, as well as the fact that the victim never mentioned defendant saying he had a gun in any other statement she had given. Counsel also pointed out that there was some doubt when the social media photographs were taken, and argued that it made little sense for defendant to take a photograph of himself with a gun only to dispose of the gun—which was never found despite a thorough search—immediately thereafter. Counsel emphasized that the evidence showed defendant had always been willing to accept responsibility for what he had really done, arguing that "this is a case of being overcharged."

Finally, although armed robbery does not require an actual dangerous weapon, it does require some kind of actual article used to suggest the presence of a dangerous weapon; a pure

---

[2] Defendant on appeal makes an unclear reference to "the Facebook Messenger photos," which we presume to be the photos admitted as People's Exhibits 15, 16, and 17. We have not been provided with copies of those photographs. Nevertheless, trial testimony suggests that the photographs do depict defendant in possession of a gun.

subjective belief by a victim that a defendant possesses a dangerous weapon is insufficient. *People v Barkley*, 151 Mich App 234, 237-240; 390 NW2d 705 (1986). Thus, we could not conclude that it would necessarily be an unsound trial strategy to argue that defendant did not actually have any such article in his possession, notwithstanding the subjective belief of the victim.

When defense counsel's statements are read in their full context, it is clear that the strategy of admitting to unarmed robbery was strategically sound, and counsel never lost sight of the need to challenge both the actual and the implied presence of a gun during the robbery. The victim's testimony that defendant made a spoken reference to a gun would reasonably have been a surprise for which counsel cannot be faulted. We conclude that on this record, there is no reason to conclude that a remand for a *Ginther* hearing would be warranted. Defendant did not receive ineffective assistance of counsel.

## IV. SENTENCE PROPORTIONALITY

Finally, defendant challenges the proportionality of his sentence. Defendant acknowledges that his minimum sentence is within the applicable sentencing guidelines range. Pursuant to MCL 769.34(10), we are therefore required to affirm his sentence. Defendant asks us to find MCL 769.34(10) inapplicable in light of our Supreme Court's decision in *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). We decline. This Court has already determined that "*Lockridge* did not alter or diminish MCL 769.34(10)." *People v Schrauben*, 314 Mich App 181, 196 & n 1; 886 NW2d 173 (2016). A published opinion of this Court has precedential effect under the rule of stare decisis and binds lower courts and tribunals. MCR 7.215(C)(2); see *People v Smith*, 496 Mich 133, 140 n 17; 852 NW2d 127 (2014). Furthermore, published opinions issued on or after November 1, 1990, also bind subsequent panels of this Court. See MCR 7.215(J)(1); see also *People v Mansour*, 325 Mich App 339, 351 n 8; 926 NW2d 26 (2018). In this case, defendant's minimum sentencing guidelines range was 126 to 262 months. The trial court sentenced defendant to 140 to 300 months' imprisonment, the 140 months' minimum being well within the minimum sentencing guidelines range. Accordingly, because this Court has determined that our Supreme Court's decision in *Lockridge* did not alter the continued validity of MCL 769.34(10), we must affirm the trial court's sentence.

Affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

-6-